IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| XR10 CAPITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-401-RGA |
| | ) | |
| NICKOLAS L. REINHART, | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

# DEFENDANT'S OPENING BRIEF
## IN SUPPORT OF HIS MOTION TO DISMISS OR STAY

Todd H. Bartels
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
Telephone: (816) 753-1000
Facsimile: (816) 753-1536
tbartels@polsinelli.com

**POLSINELLI PC**
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
skraftschik@polsinelli.com

*Counsel for Defendant Nickolas L. Reinhart*

Original Filing Date: May 31, 2024
Redacted Filing Date: June 7, 2024

# TABLE OF CONTENTS

                                                                                              Page

I. NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II. INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................................ 1

III. STATEMENT OF FACTS ................................................................................................... 1

IV. ARGUMENT ........................................................................................................................ 4

    A. THIS CASE SHOULD BE DISMISSED OR STAYED PURSUANT TO THE COLORADO RIVER ABSTENTION DOCTRINE ............................................................. 4

        1. This action is parallel to the contemporaneously filed, expeditiously progressing Chancery action. .................................................................................................... 6

        2. The Colorado River Factors Weigh Heavily in Favor of Abstention. ........................... 8

    B. THE COURT SHOULD STAY THE MATTER UNDER ITS INHERENT AUTHORITY ............................................................................................................................. 10

V. CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Plastics, LLC v. Eric Hummel, et al.*,
    N.D. Ohio No. 2024-cv-00660 D.I.1 ...................................................................................4

*CIMA Labs Inc. v. Mylan Pharm., Inc.*,
    C.A. No. 10-625-LPS, 2011 WL 1479062 (D. Del. Apr. 18, 2011).......................................11

*Clinton v. Jones*,
    520 U.S. 681 (1997)..................................................................................................12

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976).......................................................................................... *passim*

*Dietz v. Bouldin*,
    579 U.S. 40 (2016)....................................................................................................12

*Gilbane Bldg. Co. v. Nemours Foundation*,
    568 F. Supp 1085 (D. Del. 1983)..................................................................................8

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983)......................................................................................10

*Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer*,
    629 F. App'x 348 (3d Cir. 2015) ..........................................................................4, 5, 6

*Graphic Properties Holdings, Inc. v. Toshiba Am. Info., Sys., Inc.*,
    C.A. No. 12-213-LPS, 2014 WL 923314 (D. Del. Mar. 5, 2014) .........................................11

*Jansan Acquisition, LLC v. Nickolas Reinhart*,
    Del. Ch. C.A. No. 2024-0334-LWW, D.I. 5.................................................................2, 3

*Kelly v. Maxum Specialty Ins. Grp.*,
    868 F.3d 274 (3d Cir. 2017)..........................................................................................6

*Landis v. North American Co.*,
    299 U.S. 248 (1936)..................................................................................................10

*Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*,
    C.A. No. 11-176-LPS, 2011 WL 5523315 (D. Del. Nov. 14, 2011)......................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)...............................................................................................5, 8, 10

95313433.2

*Nationwide Mut. Fire Ins. Co. v. Hamilton*,
 571 F.3d 299 (3d Cir. 2009) ............................................................................................5, 8

*Novartis AG v. HEC Pharm Co.*,
 183 F. Supp. 3d 560 (D. Del. 2016) ...................................................................................11

*Robinson v. Ruiz*,
 772 F. Supp. 212 (D. Del. 1991) ..........................................................................................5

*Sea Colony, Inc. v. Alcan Aluminum Corp.*,
 653 F. Supp. 1323 (D. Del. 1987) ....................................................................................5, 8

*Yang v. Tsui*,
 416 F.3d 199 (3d Cir. 2005) .................................................................................................7

**Other Authorities**

17A James Wm. Moore, MOORE'S FEDERAL PRACTICE § 122.06[1] ...............................................7

## I. NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff XR10 Capital, LLC ("XR10" or "Plaintiff") filed its Complaint in this action on March 28, 2024, at approximately the same time that its wholly-owned subsidiary, Jansan Acquisition, LLC ("Jansan"), was filing a substantially identical Complaint in the Delaware Court of Chancery (the "Chancery Action"). Defendant Nickolas Reinhart ("Reinhart" or "Defendant") hereby moves to dismiss, or alternatively to stay, this action pending resolution of the Chancery Action.

## II. INTRODUCTION AND SUMMARY OF THE ARGUMENT

This action, stemming from the sale of a group of companies engaged in the plastics business, is parallel to and duplicative of a contemporaneously filed state court action. As detailed below, counsel for Plaintiff brought this suit concurrently with the substantially identical Chancery Action. The claims in the Chancery Action are premised on the same set of facts as the present Complaint, was filed by virtually the same plaintiff, and seeks relief against the same defendant for the same alleged harm. Furthermore, Plaintiff's chosen strategy to assert its claim in this Court despite the pending Chancery Action constitutes an attempt to take multiple bites at the same apple. As outlined below, the *Colorado River* doctrine factors clearly favor dismissing this action or, in the alternative, staying it pending resolution of the Chancery Action. Further, this court has extensive discretion to stay this matter, in the interest of avoiding conflicting judicial opinions and promoting judicial efficiency.

## III. STATEMENT OF FACTS

In February 2022, Reinhart sold his minority interest in Jansan to a buyer now known as XR10 . Jansan's business—which operates through its wholly-owned subsidiary, American Plastics LLC ("AP"); AP's subsidiary, Creative Plastic Concepts, LLC ("CPC"); and CPC's subsidiaries—involves the design, manufacture, and sale of plastic-injection molded home and

1

garage storage solutions and storage containers. (D.I. 1 ¶ 1). Through the 2022 purchase, XR10 became the parent company of both Jansan and AP. (*See* D.I. 1 ¶¶ 1, 8-11 (describing structure of XR10, Jansan, and the "AP Group Companies")).

At present, Reinhart owns Findlay Machine & Tool, Inc. ("FMT"), a plastic injection molding business, and Kreate Extrusion ("Kreate"), a product development company.

On March 28, 2024, Jansan, via the same firm that filed this suit sued Reinhart in the Chancery Action, *Jansan Acquisition, LLC v. Nickolas Reinhart*, Del. Ch. C.A. No. 2024-0334-LWW, D.I. 5 (attached hereto as "**Exhibit A**")[1]. In that seven-count complaint, Jansan alleges breach of contract, breach of the covenant of good faith and fair dealing, tortious interference with existing and prospective economic advantage, tortious interference with certain agreements containing restrictive covenant provisions, and Misappropriation of Trade Secrets. Jansan claims Reinhart violated the restrictive covenants by "raid[ing] the employees…of the AP Group Companies" and soliciting business from Jansan's subsidiaries' customers ▮▮▮▮▮ ▮▮▮▮▮ (Ex. A, ¶¶ 3-5). Further, Jansan alleges Reinhart misappropriated confidential business information and trade secrets by virtue of his alleged improper solicitation of employees and customers. (*Id.* at ¶ 69).

In the Chancery action, Jansan seeks relief for AP, Jansan's subsidiary, and AP's subsidiaries. For instance, Jansan seeks an order "[e]njoining Reinhart *and his affiliates*[2] from

---

[1] Exhibit A is the publicly available complaint that AP's parent entity filed in the Delaware Chancery Court and contains certain redactions. AP's parent entity obtained an order from the Chancery Court for certain confidential treatment of this complaint. Should the Court desire to review a full unredacted copy, the undersigned will of course file it under seal or otherwise make it available.

[2] While "affiliates" is not defined, Jansan undoubtedly maintains that it includes employees of and businesses owned by Reinhart, such as Hummel, FMT and Kreate, Defendants herein.

directly or indirectly soliciting or hiring any employee of the *AP Group*,³ or from hiring any such employee who has left such employment;" [e]njoining Reinhart *and his affiliates* from directly or indirectly soliciting or enticing, or attempting to solicit or entice, any existing or prospective customers . . . of the *AP Group* for purposes of diverting their business or services in connection with the Restricted Business in the Territory;" and [e]njoining Reinhart *and his affiliates* from usurping existing and future business opportunities of Jansan *and its subsidiaries*⁴ by using the Confidential Information, Intellectual Property and other trade secrets to compete with Jansan *and its subsidiaries*." (*Id.* at p. 46) (emphases added). Reinhart, represented by the undersigned counsel, has already filed his responsive pleading in that matter, including by asserting third-party claims against AP. A scheduling order has been entered in the Chancery action, discovery is underway, and a hearing has been scheduled on Jansan's Motion for Preliminary Injunction for September 4, 2024.

On March 28, 2024, the same law firm filed this lawsuit against Reinhart stemming from the same set of facts on behalf of AP's ultimate parent company, XR10 Capital, LLC. (*See* D.I.1). Like the entity through which it owns AP, Jansan, XR10 sues Reinhart for the same alleged misconduct, on the same theories of liability, to prevent or compensate for the same alleged harm to the same entities—"the *AP* Group companies"—by suing the same Defendant and purporting to reach the same alleged nonparty "affiliated individual[s] or enterprise[s]" of Defendant. (*Compare id.* ¶¶ 16, 32-59, *and id.* at 31-32 (request for relief here), *with* Ex. A ¶¶ 16, 34-68 *and id.* at 45-47 (request for relief in Chancery Court)).⁵

---

³ The Delaware Chancery Court Complaint defines "AP Group" as "AP or its subsidiaries." (*Id.* at ¶ 1).

⁴ Again, AP is a direct subsidiary of Jansan and indirect subsidiary of XR10.

⁵ Finally, on April 12, 2024, MMWR filed yet another suit—this time, in the Northern District of Ohio—on behalf of AP itself, against Eric Hummel, two of Mr. Reinhart's enterprises

3

More specifically, the AP parent suing in this case, like the one suing in Chancery Court, alleges that Reinhart has solicited AP Group company customers' business and "raided" AP Group company employees, thereby violating allegedly enforceable restrictive covenants contained in a purchase agreement between Reinhart and the plaintiff parent entity. (*Compare* Dkt. 1 ¶¶ 3-6, *with* Ex. A, ¶¶ 3-6). Further, as in the Chancery action, the Plaintiff alleges that, because the (same) employees left the AP Group companies to work for FMT and Kreate, they have brought with them certain skills and knowledge and thereby enabled Reinhart to solicit certain customers of the AP Group companies. (*Compare* D.I.1 ¶¶ 5, 40-59, 65-66, *with* Ex. A ¶¶ 5, 42-61, 67-68). Importantly, like its subsidiary alleges in Chancery court, Plaintiff XR10 claims that Reinhart solicited these employees and thus induced them to bring AP Group trade secrets with them, in violation of substantially similar restrictive covenants. (*Id.*).

IV. ARGUMENT

    A. **THIS CASE SHOULD BE DISMISSED OR STAYED PURSUANT TO THE COLORADO RIVER ABSTENTION DOCTRINE**

As established by the Supreme Court in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), to avoid duplicative and piecemeal litigation, a federal court may dismiss or stay a case where there exists a pending parallel state court action.

A court's application of the *Colorado River* abstention doctrine requires a two-step analysis. First, as a threshold matter, the court must determine whether the plaintiff's federal action is parallel with a pending state action. *See Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate*

---

(FMT and Kreate), and John/Jane Doe individuals and corporations supposedly presently unknown to Plaintiff. (*See American Plastics, LLC v. Eric Hummel, et al.*, N.D. Ohio No. 2024-cv-00660 D.I.1). Defendant Eric Hummel ("Hummel") formerly served as AP's Director of Tooling. Hummel tendered his resignation to AP in December of 2023. Hummel is presently employed by FMT and Kreate Extrusion. Defendants in that matter have moved to dismiss or stay the action pursuant to the *Colorado River* doctrine.

95313433.2

*of Shaffer*, 629 F. App'x 348, 350 (3d Cir. 2015). The two proceedings are considered "parallel" when they involve the same parties, substantially identical claims, and seek the same remedies. *Id.* This does not mean that the proceedings must be identical, but rather substantially similar. *Robinson v. Ruiz*, 772 F. Supp. 212, 214 (D. Del. 1991) (citations omitted).

Second, if the actions are determined to be parallel, a court must then apply the various *Colorado River* factors to determine whether abstention is appropriate under the facts of the case. *Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer*, 629 F. App'x 348, 350 (3d Cir. 2015). In *Colorado River*, the United States Supreme Court identified several factors federal courts should consider in determining whether exceptional circumstances exist in a particular case: "(1) the inconvenience of the federal forum; (2) the desirability of avoiding piecemeal litigation; (3) the order in which the proceedings were initiated; and (4) the presence of a *res* or property over which jurisdiction has been asserted." *Sea Colony, Inc. v. Alcan Aluminum Corp.*, 653 F. Supp. 1323, 1326 (D. Del. 1987) (citing *Harvey & Harvey v. Delaware Solid Waste Authority*, 600 F. Supp. 1369, 1375 (D. Del 1985)). Two additional criteria were considered by the Supreme Court in *Moses H. Cone Hospital*: (5) whether federal law provides the rule of decision on the merits, and (6) the adequacy of the state court proceedings to protect plaintiff's rights. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26 (1983); *see also Nationwide Mut. Fire Ins. Co. v. Hamilton*, 571 F.3d 299, 307-08 (3d Cir. 2009); *Sea Colony*, 653 F. Supp. at 1326.

These factors, however, do not comprise a mechanical checklist. Rather, they require "a careful balancing of the important factors as they apply in a given case" depending on the particular facts at hand. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 15-16. If abstention is appropriate under the *Colorado River* factors, a district court should grant a motion to dismiss or stay the action. *See id.* at 14.

95313433.2

## 1. This action is parallel to the contemporaneously filed, expeditiously progressing Chancery action.

The Chancery action, filed by Plaintiff's counsel here, is unquestionably parallel to this proceeding. As previously noted, the Third Circuit has observed that two actions are "parallel" if they involve "substantially similar parties and claims." *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 285 (3d Cir. 2017). While the parties are not identical, the plaintiffs are effectively the same, as Plaintiff XR10 is Jansan's parent company, which is specifically suing in the Chancery action to prevent alleged harm to itself and the AP Group of subsidiaries. All of these companies fall under the umbrella that is the plaintiff here, and the nonparty subsidiaries allegedly harmed are coextensive.

Here, Plaintiff effectively alleges an identical interest with its subsidiary, Jansan, which has sued in Chancery Court by alleging (like Plaintiff) that it is being harmed by conduct by Reinhart and "his affiliates" through conduct directed toward the same subsidiaries of both plaintiffs. (*Compare* D.I.1 ¶¶ 2-7, *with* Ex. A ¶¶ 2-7 (both alleging "raid[ing] the employees . . . of the AP Group companies" and on information and belief that those employees took "Confidential business information and know-how" to "companies ultimately owned and controlled by Reinhart that are completing directly with Jansan's AP Group")).

Moreover, this action involves the same allegations and same material facts as the Chancery action as detailed above. *Golden Gate Nat. Sr. Care, LLC v. Minich ex rel. Estate of Shaffer*, 629 F. App'x 348, 350 (3d Cir. 2015). Indeed, both complaints even include a substantially verbatim summary of the facts from which each "case arises." (*Compare* D.I.1 ¶ 16, *with* Ex. A ¶ 13). Further, here, Plaintiff alleges that, when Reinhart sold his interest in Jansan and the AP Group companies, "Reinhart agreed to certain other restrictive covenants … including, … that he and his affiliates (i) refrain from disclosing the confidential information of Jansan or any affiliated

6

company (which includes AP and its subsidiaries) and (ii) refrain from soliciting the employees or customers of AP and its subsidiaries for a period of two years." (D.I.1 ¶ 21). This Complaint, like the Chancery complaint, is premised on restrictive covenants contained in an agreement by which Reinhart sold his interest in one of XR10's subsidiaries, with the same alleged conduct constituting breaches of similar covenants in both agreements. (*Id.*). Both actions allege that Reinhart somehow poached employees and, in doing so, brought with him certain, unspecified trade secrets which violate the restrictive covenants.

Additionally, both complaints bring identical causes of action: breach of contract (non-solicitation of an employee and non-competition and non-solicitation of customers of customers), breach of good faith (solicitation of employees and non-competition and solicitation of customers), tortious interference with existing and prospective economic advantage, tortious interference with the Nichols agreement, and misappropriation of trade secrets. (*Compare* D.I.1 ¶¶ 72-136, *with* Ex. A ¶¶ 74-138). These counts are premised upon the same allegations: that confidential information was taken from AP Group Companies and that Defendants solicited business from their customers, thereby harming existing business relationships and future business opportunities. *See id.*; *Yang v. Tsui*, 416 F.3d 199, 205 n.5 (3d Cir. 2005) (federal and state proceedings are parallel when they raise "substantially identical claims [and] nearly identical allegations and issues"); 17A James Wm. Moore, MOORE'S FEDERAL PRACTICE § 122.06[1] (federal and state actions "need not," however, "be identical to be considered parallel for abstention purposes").

In sum, the plaintiffs in these cases are Jansan and its sole member, with both plaintiffs seeking the same relief against the same defendant and non-parties, based on the same set of operative facts, and same alleged harm to the AP Group companies. This action is thus duplicative
7

of the contemporaneously filed and expeditiously progressing Chancery action and is therefore "substantially similar" and parallel.

### 2. The Colorado River Factors Weigh Heavily in Favor of Abstention.

Because this action is parallel to the Chancery action, this Court must address the *Colorado River* doctrine factors, which clearly weigh in favor of dismissal or stay of this action.

With regard to the first factor, in determining whether a federal forum is inconvenient to the parties, this Court must consider the relative ease of access to the sources of proof, the availability of compulsory process for attendance of unwilling witnesses, and the enforceability of a judgment if one is obtained. *Gilbane Bldg. Co. v. Nemours Foundation*, 568 F. Supp 1085, 1089 (D. Del. 1983); *see also Sea Colony*, 653 F. Supp. at 1327 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). This factor is neutral because both actions are in Delaware and both Plaintiff XR10 and Jansan are Delaware limited liability companies. *See Hamilton*, 571 F.3d at 308 (finding the factor to be neutral when the location of both the federal and state actions are convenient for both parties).

The second factor, the desirability of avoiding piecemeal litigation, which is "by far the most important factor,"[6] heavily favors abstention because the Complaint has given rise to duplicitous and/or piecemeal litigation by attempting to litigate the same conduct here that is already being litigated, on an expedited basis, in Chancery court. To allow the present suit to proceed would result in two separate courts adjudicating the same issues: whether Reinhart raided the AP Group companies to extract employees who brought with them certain confidential information and trade secrets, thereby violating the restrictive covenants contained in the sale agreement and other agreements entered between the parties.

---

[6] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16.

95313433.2

Through the same counsel, Plaintiff and its subsidiaries are bringing multiple suits in various jurisdictions on behalf of the AP Group companies against similar actors. These suits all stem from the same set of operative facts—Reinhart's sale of the AP Group companies, the agreements entered into between the various actors, and certain AP Group employees leaving the company—with either the intent or effect of allowing the AP Group broadly to take multiple bites of the same apple. In this case, XR10's allegations mirror those of its wholly-owned subsidiary, Jansan, in the Chancery action. Further, the outcome of this action depends upon the resolution of the same issue in the Chancery action. The threat of piecemeal results is thus especially high. All issues relating to whether Reinhart "raided" the AP Group employees and took certain knowledge, information, trade secrets, and customers, can and should be dealt with in the Chancery action.

The third factor, the order in which the proceedings were initiated, similarly weighs in favor of abstention. Here, while both suits were filed on the same day, the Chancery action has progressed considerably further than this action. The parties are already actively engaged in expedited discovery, and to date have served written discovery and exchanged preliminary ESI search terms and protocols. The parties have also participated in one conference with the Chancery court and a hearing on Jansan's Motion for Preliminary Injunction, seeking the same relief for the same alleged harm to the AP Group, is scheduled for September 4, 2024. This factor thus strongly favors deferring to the Chancery action.

The fourth factor, the presence of a *res* or property over which jurisdiction has been asserted, does not apply in this instance as the court has not assumed jurisdiction over any *res* or property.

9

The fifth factor, whether federal law provides the rule of decision on the merits, favors abstention because no substantive federal issue is presented in this case. Both cases are premised entirely on common law claims.

As to the sixth factor, the Chancery action is adequate to protect XR10's rights. As previously noted, XR10 is the parent company of Jansan, with the same firm representing both plaintiffs. If Jansan were to succeed in the Delaware action, this action effectively becomes moot.

In sum, this federal action and the Chancery action are parallel, and the *Colorado River* doctrine factors favor abstention. Accordingly, this matter should be dismissed, or otherwise stayed pending resolution of the Chancery action. In *Moses H. Cone*, the Supreme Court did not determine that a *Colorado River* analysis turns on any "one factor," but rather must rest on "a careful balancing of the important factors as they apply in a given case." 460 U.S. at 15-16 (internal quotation omitted). Thus, this Court can and should decline to exercise its jurisdiction in light of the parallel litigation pending in the Delaware Court of Chancery.

**B.  THE COURT SHOULD STAY THE MATTER UNDER ITS INHERENT AUTHORITY**

Even if the *Colorado River* doctrine did not favor a dismissal or stay (it does), the Court should still stay the matter pursuant to its inherent authority. Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 252 (1936). Further, the Court has the power to "schedule disposition of the cases on its docket so as to promote fair and efficient adjudication" and, correspondingly, has "wide discretion in setting [its] own calendar[]." *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983).

Courts in this District generally apply three factors in deciding whether to stay a case: (1) "whether a stay will simplify the issues and trial of the case"; (2) "whether discovery is complete and a trial date has been set"; and (3) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party." *Novartis AG v. HEC Pharm Co.*, 183 F. Supp. 3d 560, 562 (D. Del. 2016) (citing *Enhanced Sec. Research, LLC v. Cisco Sys., Inc.*, C.A. No. 09-571-JJF, 2010 WL 2573925, at *3 (D. Del. June 25, 2010)).

All three factors weigh in favor of a stay here. First, a stay would simplify the issues and trial of the instant dispute. As discussed in the preceding section, the claims in Plaintiff's Complaint are substantially the same as those in the Chancery action. Permitting the instant matter to proceed would be more than "potentially wasteful," *id.*, and will certainly result in "duplicative proceedings." *Graphic Properties Holdings, Inc. v. Toshiba Am. Info., Sys., Inc.*, C.A. No. 12-213-LPS, 2014 WL 923314, at *2 (D. Del. Mar. 5, 2014).

As to the second factor, the present case is in its infancy. Neither side has initiated discovery; no trial date is set. In contrast, in the Chancery action, Reinhart has already filed his responsive pleading, a scheduling order has been entered, expedited discovery is underway, and a hearing has been scheduled on Jansan's Motion for Preliminary Injunction for September 4, 2024. *See, e.g.*, *Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, C.A. No. 11-176-LPS, 2011 WL 5523315, at *3 (D. Del. Nov. 14, 2011) (granting a stay where "relatively few resources appear to have been expended so far on the litigation" while the other action was "moving quickly"). In sum, the action pending in the Chancery action is beyond "mature," while the instant action is still "in its infancy." *CIMA Labs Inc. v. Mylan Pharm., Inc.*, C.A. No. 10-625-LPS, 2011 WL 1479062, at *4 (D. Del. Apr. 18, 2011).

11
95313433.2

Finally, a stay would not unduly prejudice Plaintiff or pose any tactical disadvantage, because it can and is pursuing the same theories of liability to seek the same relief, through the same counsel, and on an expedited basis in the Chancery action. Here, it would be prudent for this Court to stay this matter via its own authority in the interest of judicial expediency. *See, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (noting a district court has "broad discretion to stay proceedings as an incident to its power to control its own docket"); *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

## V. CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court dismiss or stay Plaintiff's Complaint pursuant to the *Colorado River* abstention doctrine, or otherwise stay this action pursuant to its inherent authority pending resolution of the underlying Chancery action.

        POLSINELLI PC

        */s/ Stephen J. Kraftschik*
        Stephen J. Kraftschik (#5623)
        222 Delaware Avenue, Suite 1101
Todd H. Bartels     Wilmington, DE 19801
POLSINELLI PC     Telephone: (302) 252-0920
900 W. 48th Place, Suite 900     Facsimile: (302) 252-0921
Kansas City, MO 64112     skraftschik@polsinelli.com
Telephone: (816) 753-1000
Facsimile: (816) 753-1536     *Counsel for Defendant Nickolas L. Reinhart*
tbartels@polsinelli.com

May 31, 2024

# CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 7, 2024, upon the following in the manner indicated:

| | |
|---|---|
| R. Montgomery Donaldson<br>Marc J. Phillips<br>Stefania A. Rosca<br>**MONTGOMERY MCCRACKEN<br>   WALKER & RHOADS LLP**<br>1105 North Market Street, 15th Floor<br>Wilmington, DE  19801<br>Telephone:  (302) 504-7840<br>Facsimile:  (302) 504-7820<br>rdonaldson@mmwr.com<br>mphillips@mmwr.com<br>srosca@mmwr.com | *BY ELECTRONIC MAIL* |

*Counsel for Plaintiff Jansan Acquisition, LLC*

| | |
|---|---|
| Timothy J. Pastore<br>**MONTGOMERY MCCRACKEN<br>   WALKER & RHOADS LLP**<br>437 Madison Avenue, 24th Floor<br>New York, NY 10022<br>(212) 551-7707<br>tpastore@mmwr.com | *BY ELECTRONIC MAIL* |

*Counsel for Plaintiff Jansan Acquisition, LLC*

Brett M. Waldron  　　　　　　　　　　　　　　　　*BY ELECTRONIC MAIL*
Elizabeth Catalano
**MONTGOMERY MCCRACKEN**
　　**WALKER & RHOADS LLP**
1735 Market Street
Philadelphia, PA  19103
(215) 772-1500
bwaldron@mmwr.com
ecatalano@mmwr.com

*Counsel for Plaintiff Jansan Acquisition, LLC*


　　　　　　　　　　　　　　　　　　　　　　　*/s/ Stephen J. Kraftschik*
　　　　　　　　　　　　　　　　　　　　　　　────────────────────────────
　　　　　　　　　　　　　　　　　　　　　　　Stephen J. Kraftschik (#5623)